Nguyen v. American Commercial Lines, L Nguyen and Williams. We're first from Mr. Stoltz. Are you ready? Good morning, Your Honors. Terry Stoltz from Nickelhead, Hornig and Sweeney for American Commercial Lines, with William Baldwin from Jones Walker as well. What we're dealing with here today is an Oil Pollution Act case arising out of an oil spill that occurred back in July 2008 here in the city of New Orleans. The issue here is the question of presentment. As I'm sure Your Honors are all familiar, the Oil Pollution Act requires third parties who are filing claims for damages are required to first present those claims to the responsible parties. In this case, right after the collision within days, American Commercial Lines was identified as the responsible party because they owned the barge from which the oil was spilled. That makes them strict liability without fault because, in fact, we ultimately had a trial where American Commercial Lines was completely exonerated from any fault for the collision. Nonetheless, they are currently out over $70 million in cleanup expenses and payment to third parties. The issue here is twofold. First one is, what does it take to make proper presentment of a claim to a responsible party? The second issue deals with there are two different time provisions under the Oil Pollution Act. One requires that presentment be made 90 days before any suit can be brought against the responsible party. The purpose for that 90-day period supposedly is to allow the parties to negotiate settlements in order to avoid the need for unnecessary litigation. Then the second time period is, in fact, the statute of limitations, which is three years from the time the party knew that it was damaged by the oil spill. It's our position with respect to a few, I think it's about 22 of the fishermen who are involved in this case, did not actually file any claims, present any claims to ACL until July 2011, and then the lawsuit was brought literally within days, well within the 90-day period, and that those claims have to be dismissed because they didn't allow the 90-day period. Does the record show anything about why they waited until July of 2011 to present them? Not as far as I'm aware, Your Honor. And then the second position that we have deals with all of the claimants, not just those late claimants, but all of the claimants. Our position is they didn't make proper presentment because the CFR sets forth certain requirements for what needs to be presented in a claim, and as I understand it, the fishermen's position is that there's two different kinds of claims. There's one claim that's going to go to the oil spill fund, and there's a second claim that's going to be asserted, for example, in this case, in litigation against the responsible party. The thing is, OPA doesn't talk about two different claims. OPA talks about the claim, says that the third party should present their claim to the responsible party, and then if it's denied or if it's not resolved within 90 days of presentment, then the third party has the option to either bring a suit against the responsible party or to file the claim, meaning the same claim that was presented to the responsible party, to file that claim with the oil spill liability trust fund. And there are clear statutory regulations which have to be included in those claims, and it's our position that the statute is clear that those regulations also apply to claims against third parties. In 2713E, the statute provided that regulations were to be adopted for presenting claims against the fund, but in 2714B, they talk about the obligation of the responsible party to advertise the fact that they've been designated the responsible party and their obligation to put up a claims administrator and to advertise that. And in that section, it says that the advertisement shall advertise the designations and the procedures by which claims may be presented in accordance with the regulations. So as far as we're concerned, the statute's very clear that in order to present a proper claim to the responsible party, it has to meet the requirements for the claim then being ultimately presented to the National Pollution Fund Center, who monitor the oil spill trust fund. And I don't think there's any dispute in this case that they never presented claims that comply with the requirements of the regulations. It's the fisherman's position that the definition of claim in the Act just says a written statement for a sum certain. And that is, there's no question, that is the way it's defined in the definition section. But as I just pointed out, in 2713, they talk about how there will be regulations adopted for the requirements of a claim. So clearly the statute anticipated that third parties were going to have to do more than simply provide a letter with a sum certain. And the reason for that is obvious. The 90-day period was put in so that parties could negotiate in order to try to avoid litigation. And as it's set forth, I think, very clearly in the district court opinion in Virginia in Johnson v. Colonial, way back in 1993, that the reason that you look to the regulations and the requirements is because if you don't, the 90 days get spent trying to compile the so the parties can engage in a negotiation. And that's exactly the problem we have right now. I mean, here we are. I mean, the first claim letter was sent to us in June of 2009, and as I stand before you today, I still don't have the information I need to be able to analyze the claims. Even though, if this case is to go forward in the district court, all the same information is going to have to be produced. It's clearly going to be discoverable material. And exactly why it hasn't been produced, I have no idea, Your Honor. But the fact of the matter is we've taken what was given to us, we've provided it to forensic accountants, and we've been told they can't analyze the claims because they don't have enough information. And we've gone back and asked for the very information that the forensic accountants have told us we need in order to evaluate the claims. And we've asked for it, and we haven't gotten it. And yes, this is a statute that makes American commercial lines liability without fault. But they still have to be able to show a causation between the oil spill that we're going to be held liable for and what they allege their losses are. And one of the things we've asked for, because we had to, as is fairly typical in an oil spill case, in addition to third parties, right, you have the governments coming in for what they call natural resource damage assessments. So we've had people monitoring the natural resources damage assessments from almost the day of the collision on. And as far as we're aware, the fishing grounds, the clamming grounds, nothing was ever closed, right? So we don't – there's an allegation in the fishermen's brief here that the oils went all throughout the marshes and all throughout the floodlands. And that's absolutely contrary to what we've been told by all of our experts. And there's no site to the record to support that, because I've never seen any such thing. I'm not aware that it exists. But – so what we asked for was, tell us where you fish and tell us where you keep your boats, where you dock your boats, because it is – because there is no question that at – for a time, portions of the river were shut down. And if their boat and where they fish, if the river was shut down between them, then they may be able to show causation. But they won't tell us where their boats are docked. They won't tell us where they fish. So we don't know if there's any causation for these claims or not. So you, in effect, what you want to do is you want to get all the raw material for a fully tried case in the claim. Well, I don't think it's as broad as what I would ask for in discovery in a federal court, but it is – I am looking for what the regulations say I'm entitled to, which is a reasonable evidence to be able to evaluate their claim. But if at the end of the day, you don't like what you get, you can just say we're not going to pay the claim at the end. That's right. And they can try the case. And at that point, we end up in trial. Yeah, exactly. But what's clear from all the cases is we can't go to that trial if they haven't presented the – properly presented it to us. You've got to request for discovery. If they don't comply with discovery, they can get dismissed as a sanction. I mean – Yeah. I'm sorry? You can ask for discovery in district court. Yes. And if they don't comply, they can – the case can ultimately be dismissed as a sanction. Yes. That's right. So what's wrong with that? The information will – well, because – Why doesn't that work just fine? Because the statute says I'm not supposed to have to defend and go through the expensive part of federal court discovery. They're supposed to present the evidence to me. Well, that's the question we have to decide is how much they have to present to you. Right. But if you don't think it's enough, then you just say, sorry, you'll just have to sue me. And then you get to go to federal court. We never had that opportunity, Your Honor, because they never gave us the evidence. We were never able to evaluate. Have you asked for discovery since you've gotten to federal court? No, Your Honor. We never had that opportunity, Your Honor, because we removed the state court proceeding and we brought it to federal court, we had them consolidate it, we moved to dismiss, and that was granted. And then – but it was granted without prejudice, and they were told that they were free to make their presentation. Rather than making the presentment, they waited an extended period and then moved for a new trial. And the judge decided to grant that and directed us to make a motion for summary judgment and we complied with that direction. And you lost the motion for summary judgment. And then we lost the motion for summary judgment. We moved for reconsideration or certification, and he granted us a certification as did this court, and that's why we're here today. So there's been no discovery, no disclosure, no discovery to date in the litigation. But if you look at the claims, you know, I mean, like I said, we don't know anything about causation because we don't know where the boats were docked, we don't know where they fished, we don't know whether there, in fact, was any disruption in their ability to fish. We don't know – all of the claim letters state that fishing was interrupted for 25 days, but none of the fishermen claimed for 25 days. Some claim – and they all go back – some of them went back fishing well before the 25-day period was over. And so we don't know how to evaluate how – if it's a 25-day disruption, how could this particular fisherman go back after 10 days, you know? And we don't know how to evaluate that when we don't know where they fished, where the boats were kept, you know? I mean, so we're being asked to negotiate settlements with our hands tied behind our back. But if this case goes back to the district court, there will be a lot of discovery, and ultimately, it'll be the equivalent of probably 242 separate trials because every person's case is going to be independent of the others. Well, once you get discovery, you might be settled. Maybe. You may very well be right. But if I'd had it, they may be settled now. If I'd had what I was entitled to under the statute, they might have been settled by now. You know, there's an implication in the briefs against us that we didn't want to settle, but the fact of the matter is we kept asking for the information so we could analyze the claims. And we settled a lot of claims, and we spent – like I said, my client has spent over $70 million in cleanup and damage claims. So, you know, that assertion, I think, is just patently false. We were trying to get the information so we could analyze the claims. Unless the Court's – anybody has additional questions for me now, I'll save the rest of my time for rebuttal. Thank you, sir. Okay. Thank you. Yes, sir. Yes, sir. Your Honor, we're here on a question of law, a certification question of law. We're not here as an appeal on the denial of a summary judgment, which is what my opponent is basically arguing. This law is pretty clear. We make a presentment to the responsible party. The law is very short. It basically says – a claim is a request in writing for some certain for compensation for damages. We went beyond that. We sent numerous documents, which counsel has basically denied to the Court that they got, although the judge, in looking at this case, realized there were 10,000 approximate documents that were, in fact, provided with the presentment letters. In this case, after you file – after you make your presentment to the responsible party, you wait 90 days. If you can't get the case settled in that period of time, you have a choice, or if they deny a liability, to do one of two things. You either file a suit in federal court, or you go against the Fund. The issue that was really before this Honorable Court is whether or not the CFR regulations, which are designed for making claims against the Fund, apply in this case. They keep making a big thing that we didn't sign the form. There are no forms when you file a claim against the responsible party. You make your presentment. The law says you try to get the case settled. It doesn't say I make a presentment to the responsible party and say you either pay me this amount or you don't, and I'm going to court on it. It's made to give them information so that they could try to start discussions and maybe negotiate. I don't know of any settlement that take place where you say I want this amount and you don't talk about anything else. We've never been able to engage with Worley or even with – once we spoke with Mr. Stoltz to discuss this case, but that's not really the issues in this matter. The real issue here is whether or not the regulations that he wants us to follow, which are designated for claims against the Fund, should apply to a claim that we want to go into federal court on. If we can't make – we can't settle this matter, the law is pretty clear. If you can't settle this matter or if they deny the claim, file a lawsuit, which we did. And then what happened after we filed the lawsuit? Well, they had filed a motion to dismiss. They implied in their conversations here that this motion to dismiss indicated that we didn't make presentments. That's not what happened. Unfortunately, the defendants went beyond the nature of the Rule 12 dismissal, went beyond the pleadings, and submitted some documents, which we didn't, because the law is clear. You look at the pleadings and you make your decision on there. The court, incorrectly, unfortunately, made a decision based on their documents and said, well, we'll leave their documents and therefore we're dismissing the case. We filed a request for reconsideration. And when we filed a reconsideration, the court stated, now, plaintiffs, you are now entitled to show us what you did present to them, which we did. We sent 10,000, approximately, documents to the court. The judge looked at the documents, made a decision saying, I don't have his exact, but he basically said, based on what you presented to me, you have met the requirements substantially. This is what he said. Plaintiffs clearly satisfied the substantive requirements imposed by the language of the complaint. We provided them with all this information that they're saying they never got. The problem they've got is that we try to explain to them what they've gotten. Let me give you a rundown of some of the information that was provided to them with the documents. We provided with each individual claimant, each individual claimant, we talked to individually and got information. Yes, there's some, they couldn't fish for 25 days. Some people went out for two days a week. Some people went out for five days a week. Some lost different amounts of time. That's why there are variations in each individual claim. We provided all licenses, registrations, addresses, personal information, social security numbers, commercial licenses, the home port, vessel name, and the docking area of that vessel, common fishing grounds for that vessel, the areas fished, the days fished, the hours fished, the types of fish caught. Dock receipts from the beginning of the summer to the end of the summer. Well before this incident until after because the season only starts approximately mid-May to the beginning of September. It's a short shrimping season. That's when they did their shrimping. This was in the height of their season when all of this occurred and they couldn't go out and catch stuff. We provided not only the dock receipts, the place of each sale for each catch they had, dock receipts showing each wholesaler's name, who was sold to, the amount and type of a catch, the amount that was paid, the dates that was fished, where the catches were made, how many days they were out fishing, or if they were in port. Wait a minute. So you're telling us that you presented all this stuff. Yes, we did, Your Honor. Well, he'll get up and say you didn't. OK. But I take it that your answer is you did for all the claimants? For every single claimant, Your Honor. And that's what is disturbing to us is that they're trying to take the presentment that we had made and say, Well, you didn't give us enough. We, our accountants, we gave them two years of tax returns. Our accountants can't figure this stuff out. Well, they can't figure it out. We told them that because you've got a tax return, which is a yearly tax return. This was a small area of time that we're talking about. It's probably three weeks that they couldn't fish. And they've got different amounts for the different types of fishing throughout the year. We explained to them, we tried to explain to them, we couldn't talk with Warler. We kept calling and calling and calling. I finally talked with Mr. Stoltz. I sent him seven exemplar cases. We went through each one individually. And I said, Can we now talk? Now I'm explaining to you how we've come up with these numbers. And he said, Well, we've got a motion to dismiss. Let's wait until after the motion to dismiss and see what happens. Then we can talk. Well, unfortunately, the motion to dismiss was granted incorrectly. The judge realized he made a mistake. Let us go forward with a summary judgment so evidence could be shown to the court that we, in fact, did make proper presentments. We explained the nature and extent of these injuries. We explained how the stuff was calculated. We explained the dollar amount. We asked for some certain, which is what the law requires. We did everything proper under presentment. We didn't just send them a letter saying, Hey, we're making a claim. Please pay us for these things. We gave all the information. We basically almost got stonewalled. I can only presume, and this is only a presumption on my part, that the BP oil spill happened in 2010, and I believe Worley was involved in that, and we got pushed to the back burner. This is what I'm assuming. I don't know that. But we kept trying and trying to get this matter going, and it kept sending us the same letter. Well, you haven't told us where this is and where this is. Well, the law doesn't really require that I give them that information. I want to because I want the cases settled. And I said, I've presented this to you. Let's go through it, but we could never sit down with them to do this. I mean, why would I go through all the trouble of presenting 10,000 documents if I didn't have the intention of trying to get a case settled? If it can be settled. If it can't be, fine. And that's what we did. We waited right to the very end. We couldn't get the matter settled. We said, well, and I sent them a letter. If you can't get it settled, you're going to put me in a situation of filing suit, which we didn't. And that was our option, file suit or make a claim against the fund, which is the CFR regulations. The CFR regulations only apply to the fund. We didn't file a claim against the fund. We were unable to settle the case in the 90 days. They tacitly denied it by not paying or anything, so we filed the lawsuit. We're there now. If there's more information that they want, fine. I don't know what else we can give them except it's their interpretation of the information we gave them. They have not sat down and truly analyzed this. They've got some guys in New York, wherever it is, tax accountants that said these tax returns don't give us enough information. Well, look at the other information I gave you. I mean, we've tried to explain this to them, but, again, the law doesn't say that a claim has to be settled when you make a presentment. It just says I'm telling you about the nature and extent of my damages. I'm asking for some certain. Here's a breakdown. We gave them a breakdown, each different category of what the dollar amounts were. And then we tried to discuss it with them. We could never get to that point because they kept coming back with this like a parrot going back and forth, the same old stuff. Well, we still don't know whether the boat was docked. Well, it's on there. It's on each one of these dock receipts. The state requires dock receipts when fishermen come in to sell their catch. These are commercial fishermen. They go to wholesalers, and the wholesaler has extensive documentation. It's used by the state to determine where fishing grounds are, where things are being overfished, the type of fish being catched. And it also explains the monetary amounts that the fishermen are making. Does that information tell them where you dock your boat at night when you're done? It does have the home port on there, yes. I believe it does, Your Honor. That's what I'm saying. There was enough information for at least discussions to start, and that was the purpose of OPA, is to try to get the fishermen paid in the beginning. This is, of course, after the Valdez incident, and they made it, I think, to try to make it easier for people that have claims, where they designate a party that's liable right away. So now you know who you're talking to. You don't have to go through and discover the founder who did something wrong. I think they said that you didn't have receipts for washing the boats. That's because he's a fisherman. They don't go to somebody to do it. They do it themselves. We came up with an amount that we thought would fairly compensate these people. Did you explain how that was derived? Yes, we did. We told them, basically, we did all this. But I guess the question is, see, now they're getting into the summary judgment issues as opposed to the issues before the court, which is the question of law. The question before the court really is, do we have to follow the CFR rules and regulations, fill out this form, sign this and all this, or do we make a claim with the court, which we did, and pursue it that way? And that's really the issue before the court for all practical purposes. Tell me about the 28 or 22 or whatever the number was that didn't get filed until late. Yes, Your Honor. The suit was filed on a Monday, and I believe we filed this on a Thursday or Friday before the suit was filed. Some of these people, early on, people had gotten wind of the claim. People came in at the last minute, I think it was last week, realized it was a three-year period, came in, brought us stuff. So we filed the claim. Now, we're in a situation, what do you do? You've got a three-year statute of limitations. You've got a 90-day period to try to work out claims. Well, we hadn't worked out the 275 previous claims in any respect, and there was no, in my mind, no way that these additional 22 were going to be made. But we went ahead, we filed a presentment to them, and we filed a lawsuit to interrupt any potential prescription issues. What is wrong with the solution that Judge Young arrived at in Boston? I forget the name of his case. The Dennehy case? Dennehy. I think the Dennehy case is a perfect case. You're between a rock and a hard place. These two statutes don't work together. That's correct. So somebody's got to do something. That's correct. Judge Young, for all of his happy qualities, is inventive, so he figured out this solution. I don't understand what's the matter with it. I think the solution was fine. He basically said you have to harmonize the two statutes together to make them work. The purpose of the law is you're trying to make the intention of what the OPO Act is to work, which is to pay people that have been damaged because of the oil spill. So he said, well, in that particular case, he allowed an additional 90 days from the hearing. Judge Lamell, in this case, said you filed the thing. Two years have already passed. That's enough time to cure any 90-day period. And he saw no reason to not allow the additional 22 claims to go forward with the additional 275 or whatever they were that had gone before. We were in the same situation with all the claims. I mean, that's all I have unless you have any questions. Thank you, sir. Thank you. You have five minutes on the roll. Just very briefly, I'd like to address the Dennehy case. The problem with the Dennehy case was that the claimants couldn't file their claim. I don't think there's any inconsistency between the two parts of the statute. The statute says you have to file 90 days before you can bring suit. You have to bring the suit within three years. So it's fairly clear you have to make your presentation 90 days before the three-year statute runs out. I don't see any inconsistency. The problem with the Dennehy case was the responsible party was only identified when there was less than 90 days from the three-year statute. So at that point, there was no way the claimants could comply with both. We don't have that issue here. Everybody knew who the responsible party was within less than a week from the time of the oil spill. And the fishermen were starting to file claims to the responsible party, to Whirley, back in 2009. So the remedy, the equity that was required to get claimants out of innocent positions they found them in, that's not the same as the people who filed their first presentations in July of 2011, literally days before the suit was brought. They have offered no explanation for why they couldn't file their claims back in 2009 when the other 200 and however many it is, I think it's 242, but maybe it's 275, but why those people, those 22 couldn't file their claims then has never been explained. So why should they be entitled to the same equitable relief that the judge gave in the Dennehy case when they had adequate time? Unless you have questions, I don't really have anything else in response. Okay, thank you, Mr. Stokes. The case is submitted. We'll adjourn until 9 o'clock tomorrow morning.